**UNITED STATES of America,
Plaintiff-Appellee,**

v.

Joseph CIOFFI, Defendant-Appellant.

No. 249, Docket 24428.

United States Court of Appeals
Second Circuit.

Argued Feb. 5, 1957.

Decided April 1, 1957.

James J. Hanrahan, New York City, for defendant-appellant.

George C. Mantzoros, Asst. U. S. Atty., S. D. N. Y., New York City (Paul W. Williams, U. S. Atty., New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, MEDINA, Circuit Judge, and SMITH, District Judge.

CLARK, Chief Judge.

This is an appeal from a judgment of conviction after verdict of a jury for dealing in narcotics and conspiring to violate the narcotics laws. The principal claims on appeal concern an alleged variance between the indictment and the proof submitted to the jury; an asserted error in the charge; and a failure to declare a mistrial because a coconspirator and prosecution witness, in answer to a question by the court, stated that he had pleaded guilty.

The single appellant, Cioffi, was indicted, together with Moscatelli and Jackson, in a three-count indictment alleging (1) that Cioffi and Jackson dealt in narcotics on May 5, 1956; (2) that Cioffi and Moscatelli committed a similar offense June 9, 1956; and (3) that the three men "and others to the Grand Jury unknown" conspired to violate various federal narcotics laws from May 5, 1956, until the date the indictment was filed, June 27, 1956. The other defendants having pleaded guilty, only Cioffi stood trial. The first count was dismissed; he was found guilty and sentenced to $1,000 fine and four years' imprisonment on the second count; on the third count he was found guilty and given a four-year sentence, to run concurrently.

1. *The Facts.* Two separate sales of heroin were proved, on May 5 and on June 8. On the case for the prosecution Jackson was a leading figure in obtaining the heroin on May 5, the purchaser being a government agent. When told by the agent that heroin was wanted, Jackson made a telephone call to La Pupps Bar. After making the call Jackson told the would-be purchaser when to meet him and how much money to bring. The purchaser was taken by Jackson to La Pupps, where Cioffi greeted Jackson and called him into the rear of the bar. A few minutes later Jackson reappeared, joined the agent, and took him to a near-by building where Jackson obtained a package containing heroin which he gave to the agent.

On June 8–9 Jackson, recently arrested, was again instrumental in obtaining heroin for a government agent pretending to be a purchaser. Jackson again called La Pupps and spoke to Cioffi, who told him to come to the bar the next day. When Jackson complied he was greeted by Cioffi, who led him into an adjoining dining room. Jackson was seen by the government agent to be seated in the dining room with Moscatelli, who was heard to tell Jackson that everything would be the same as before and that he, Moscatelli, was handling things for Cioffi. Moscatelli asked Jackson if he had the money, and Jackson handed over $1,500 in marked bills. Then Moscatelli instructed Jackson to go to a near-by building at 11:00 that evening.

During the conversation Jackson requested Moscatelli to ask Cioffi for $50 so that he could pay the rent. Moscatelli offered $50 from the roll of marked money, but Jackson advised him to leave that money intact and get the $50 from Cioffi. At that point the telephone rang. Moscatelli answered it and then went to the doorway and called Cioffi. As Moscatelli and Cioffi met in the doorway the roll of $1,500 changed hands and Cioffi answered the phone.

After the phone call Moscatelli and Cioffi walked into the barroom, and when Moscatelli returned a few minutes later he gave some money to Jackson. At 11:00 that evening the government agent and Jackson went to the designated building where they met Moscatelli, who told them where the heroin was hidden in a package under a radiator.

When the agent returned from the building with the heroin Moscatelli and Jackson were arguing about $200 Jackson claimed Moscatelli and Cioffi owed him for getting the customer. Moscatelli replied that he should not worry about his money; Cioffi was not at the bar, but the money would be left there Sunday.

Later, when Cioffi was arrested, the arresting officers found in his wallet a bill identified as one of the marked roll handed to Moscatelli by Jackson.

2. *Variance.* Upon the facts just stated the sole proof that Moscatelli was a member of the conspiracy prior to June 8 is his statement, overheard by a government agent, that everything would be the same as before and that he was handling things for Cioffi. This could mean either that he had handled things before or that he was a recent addition to the conspiracy. Under the circumstances this was too slim a reed on which to pin a finding that the conspiracy included Moscatelli prior to June 8, but it does support a finding that Moscatelli was aware of the prior business operations of the conspiracy which he joined. It is clear that Jackson was arrested and left the conspiracy before the date when Moscatelli was shown to have joined it. Consequently there is no date on which the evidence is sufficiently substantial to show that all three men were simultaneously conspirators.

■ The jury could have found, however, that Cioffi and persons unknown were peddling heroin at La Pupps Bar on May 5 and June 9; that Jackson was part of the business operation until his arrest; and that Moscatelli was part of the same operation immediately after Jackson's arrest with knowledge of the

prior dealings of the conspiracy. Note, Federal Treatment of Multiple Conspiracies, 57 Col.L.Rev. 387, 388–393 (1957). While some personnel changed, it continued to be the same conspiracy engaged in the same trade at the same stand in the same way. The variance thus consists of the fact that Moscatelli was not proved to be in the conspiracy until the day after Jackson dropped out. There is no claim in the appellant's brief that this slight variance prejudiced him in the preparation of his case or at trial. The trial judge was careful to charge that Jackson's post-arrest statements were not proof against the defendant and there were no statements made by Moscatelli before June 8. The jury did not receive evidence that would have been inadmissible under a more accurate indictment, nor was the defendant tried for participation in a conspiracy different from the one charged in the indictment. Where the discrepancy does not prejudice the defendant the variance is not grounds for reversal. Compare the facts in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

■ 3. *The Court's Charge.* Defendant also claims that the judge's charge allowed the jury to convict on the conspiracy count if it found "(1) that there was a conspiracy between Cioffi and Moscatelli to commit an offense against the United States; (2) that the defendant Cioffi knowingly associated himself with this conspiracy; and (3) that either Cioffi or Moscatelli, while a party to the conspiracy, committed an overt act in furtherance of the conspiracy." This passage occurred after other passages admonishing the jurors that "[t]he case must be decided within the scope of the charges made against the defendant as contained in the indictment" and after the judge read the whole conspiracy count of the indictment to the jury and summarized it as charging that "from the 5th of May, 1956, up to the filing of the indictment, the defendant Cioffi, together with Guido Moscatelli

and Charles Jackson, combined and conspired to violate laws relating to the sale of narcotics." While it is conceivable that some jurors ignored one part of the judge's charge and concentrated solely on the other part, there was no objection raised by defense counsel to the charge; and consequently the defendant may not assign it as error. Fed. Rules Crim.Proc. rule 30.

4. *Testimony as to Guilt of a Coconspirator.* Charles Jackson, the coconspirator who acted as a government agent after his arrest, pleaded guilty to counts one and three of the indictment before Cioffi's trial and was called by the Government as a witness. He gave his name and address, but announced to the trial judge that he refused to testify further on grounds of self-crimination. When the prosecuting attorney was given permission by the trial judge to ask the witness a few questions the following exchange occurred:

"Q. Mr. Jackson, this is the trial of Joseph Cioffi on an indictment naming Joseph Cioffi, Guido Moscatelli and Charles Jackson for violation of the federal narcotics laws on May 5, 1956 and June 9, 1956.

"Are you the Charles Jackson named as a defendant in that indictment?

"The Court: I direct that you answer.

"The Witness: My name is Charles Jackson, sure.

"Q. Are you the Charles Jackson named in the indictment? A. I suppose so.

"Q. On May 5, 1956 did you meet with your brother Richard and a person who was introduced to you as Joe from St. Louis? A. I refuse to answer that question.

"The Court: On the ground that it might incriminate you?

"The Witness: Right.

"The Court: Are you still pending trial on this indictment?

"The Witness: No, sir. I have pleaded guilty and got ten years.

"The Court: Then how can it incriminate you if you testify now?

"The Witness: Because I don't feel justified in testifying.

"Mr. Hanrahan: Your Honor, at this time I am asking for the withdrawal of a juror and a mistrial here, in view of the prejudicial question asked by your Honor at this moment.

"The Court: I deny your motion.

"Mr. Hanrahan: I take exception.

"The Court: Whether this man pleaded guilty is no evidence as to whether Mr. Cioffi is guilty. This man was accused as a defendant. He pleaded guilty. That is no evidence that Mr. Cioffi is guilty. He is a separate defendant in this case, and the jury will not consider that the guilt of one defendant is necessarily any proof of another defendant's guilt in a case, obviously."

■ The trial judge was not in error in allowing the prosecution to ask whether the witness was still pending trial on the indictment. No objection had been raised to the question. It is now claimed that it was error to deny a new trial after the answer came out. Whether or not to declare a mistrial is in the discretion of the lower court judge, who is in the best position to gauge the need for it. United States v. Giallo, 2 Cir., 206 F.2d 207, 210, affirmed Giallo v. United States, 346 U.S. 929, 74 S.Ct. 319, 98 L.Ed. 421. Here the jury did not know whether the witness had pleaded guilty to the first count of the indictment, which was dismissed against Cioffi, or whether he also pleaded guilty to the conspiracy count. The trial judge promptly admonished the jurors to disregard the witness' response, and the same instruction was included in the final charge to the jury. United States v. Falcone, 2 Cir., 109 F.2d 579, affirmed 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128; United States v. Pagano, 2 Cir., 224 F.2d 682, certiorari denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 779.

Nor was it error to allow the Government to call Charles Jackson as a witness. Inasmuch as Jackson had already pleaded guilty to the indictment he had no obvious reason for invoking the privilege against self-crimination, and there is no showing that the United States Attorney expected him to invoke the privilege on the stand. See United States v. Hiss, 2 Cir., 185 F.2d 822, 831, 832, certiorari denied 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683. The trial judge was also correct in allowing the Government to question the witness as to whether the proceedings against him under this indictment had been terminated, for that fact was crucial in deciding whether or not Jackson could invoke the privilege not to give testimony.

We have examined the other allegations of error and find them all without substance.

Affirmed.