**UNITED STATES of America, Appellee,**

v.

**Robert William MALONEY, Robert Murphy and Paul Merrick, Appellants.**

**No. 3, Docket 24870.**

United States Court of Appeals Second Circuit.

Argued Oct. 14–15, 1958.

Decided Jan. 15, 1959.

**536**

Robert F. Morten, New York City, for appellant Robert William Maloney.

John D. Kelly, Brooklyn, N. Y., for appellant Robert Murphy.

Henry A. Lowenberg, New York City, for appellant Paul Merrick.

Cornelius W. Wickersham, Jr., Brooklyn, N. Y., for appellee.

Before HAND, HINCKS and WATERMAN, Circuit Judges.

HAND, Circuit Judge.

■ This is an appeal by the defendants, Maloney, Merrick and Murphy from a judgment of conviction of the District Court for the Eastern District of New York (Bruchhausen, J., presiding), entered upon the verdict of a jury upon an indictment in five counts. The first count was for a conspiracy of five persons to pretend falsely that Maloney was an agent of the Federal Bureau of Investigation, and by this means to blackmail one, Cohen, a physician, by threatening to expose him for an abortion performed by him. The second count was for abetting Maloney in this false pretence; the third was for demanding money by the same means, and the fourth was for obtaining the money. Maloney, Merrick and Aviron (who did not appeal) were convicted under all four counts; Murphy under the first two, and Parker pleaded guilty. A fifth count was dismissed by the court and may be disregarded.

The outline of the relevant evidence is as follows. The defendant Parker appeared as a witness for the prosecution and his testimony was its main reliance. He testified that he and the other four had discussed a scheme to blackmail Cohen after inducing Cohen to perform an illegal abortion. According to the plan so arranged, the defendant Aviron, a woman, was to take an employee of Murphy, named Mascali, who was pregnant, to Cohen's office and have him abort her. This Aviron did, and Cohen performed the operation. On the next day Parker, Merrick, Maloney and Aviron went to Cohen's office and posed, Maloney as an F.B.I. agent, Parker and Merrick as New York police officers. They succeeded in extracting from Cohen $10,000 which they divided among the five and two others who were not indicted. Maloney had possession of a set of F.B.I. "credentials" which he showed to Cohen as evidence of his authority to prosecute him for the abortion. He had procured these from a man, named Silin, and had given them for safe keeping to his mistress, named Parkhurst, who put them in her safe deposit box, from which she took them and delivered them to Maloney shortly before the day when Maloney used them to blackmail Cohen.

The jury was unlikely to accept Parker's testimony unless it was corroborated. He had been an accomplice and hoped for lenity by inculpating his associates. Moreover, his own criminal record was extremely bad. He had been convicted of larceny, of extortion, and of "unlawful

entry," and had made his living largely by blackmailing at least 100 homosexuals and 50 physicians. The errors on which the appellants particularly rely arose from the examination of Parkhurst, Silin and Mascali. In order to prove that Parkhurst had kept the "credentials" for Maloney in her safe deposit box, she was asked whether she had "ever put anything into that box at the request of Robert William Maloney." Upon a previous question the judge at the request of one of the attorneys for the defense had advised her that she might refuse to answer any questions on the ground that they might incriminate her, and, so prompted, she refused to answer. When the witness, Mascali, was called she was asked whether "any arrangements" were "made whatsoever with respect to your having an abortion," and she too, after being advised of her privilege, refused to answer. Finally, the witness, Silin, similarly prompted, also claimed his privilege, when asked whether he had procured the "credentials" for Maloney.

When a witness claims his privilege, a natural, indeed an almost inevitable, inference arises as to what would have been his answer if he had not refused. If the prosecution knows when it puts the question that he will claim the privilege, it is charged with notice of the probable effect of his refusal upon the jury's mind. In the case at bar it can hardly be doubted that the answers of each of the three witnesses, if given, would have served to corroborate Parker's story, either as to Maloney's possession of the "credentials," or as to the plan for an abortion. Moreover, the prosecution on its summation conceded that, in the case of Parkhurst and Mascali, it had known, or "anticipated," that the witnesses would refuse to answer. It does not, indeed, appear that it knew that Silin would also refuse, although Parker testified that Maloney had told him that it was from Silin that Maloney had procured the "credentials." We need not say that this was enough to put the prosecution on notice that Silin would refuse; but in its summation it

referred to his refusal in a context that could only have been understood as arguing that, if he had not refused, his answer would have been in the affirmative. Such refusals have been uniformly held not to be a permissible basis for inferring what would have been the answer, although logically they are very persuasive. How to deal with them is another matter, not easy to decide; but it is clear, not only that the presumed answer has not the sanction of an oath, but—what is even more important—that the accused cannot cross-examine. If they once do get before the jury, there arises, as we have said, a strong probability that they will be taken as evidentiary.

The prosecution replies that, if it is forbidden to put the question, the jury may well assume that the witness, if called, would testify for the accused, and that this inference too would be unfair. We must confess that the situation is one in which either alternative results in prejudice to one side or the other; and it is impossible, so far as we can see, to lay down any general rule that will cover all instances. In the case at bar the prosecution knew that Parkhurst and Mascali would refuse to answer, and it seems to us that the interest of the accused should prevail over that of the prosecution, and that the judgment should not stand, for the questions touched vital elements of the charge. On the other hand, we agree that in such situations, if the accused at any stage of the trial should argue that the failure to call such a witness indicated that he would not support the charge, the prosecution should be free to disclose the fact that it had reason to suppose that the witness would refuse. Although, as we have said, it does not appear that the prosecution knew that Silin would refuse, in substance the same issue arose when on its summation it used his refusal as corroboratory of Parker.

The question has come up several times in this circuit. The first, so far as we know, was in United States v. Five Cases, etc., 2 Cir., 179 F.2d 519, 523, where we

were "not prepared to say that it would not be ground for reversal if the party who called a witness connected with a challenged transaction knew, or had reasonable cause to know, before putting the witness on the stand that he would claim his privilege." We avoided an answer because the accused had allowed the examination to go on so long without protest that he had lost any right to raise the question. In United States v. Hiss, 2 Cir., 185 F.2d 822, 832, we repeated this statement, but held that the error had not been substantial enough to justify a reversal. "It is not enough if there are no more than minor lapses through a long trial." In United States v. Cioffi, 2 Cir., 242 F.2d 473, 476–477, United States v. Romero, 2 Cir., 249 F.2d 371, 374–375, and United States v. Gernie, 2 Cir., 252 F.2d 664, 669–670, the witness had lost any privilege he might have had, because he had been convicted of the offence as to which he was being questioned. As appears in our decisions we also relied upon a cautionary admonition by the judge to the jury that they must not use the refusal as evidence of what the answer would have been. See also Weinbaum v. United States, 9 Cir., 184 F.2d 330; United States v. Amadio, 7 Cir., 215 F.2d 605, 613–614. It is true that in United States v. Gernie, supra, 252 F.2d at page 669 we said: "Under such circumstances it makes no difference whether the government has reason to believe that the witness will refuse to testify." For this we cited as authority United States v. Romero, supra, and United States v. Cioffi, supra, which rested on the fact that the privilege had ended. We do not think that the language just quoted should be read outside of the setting in which it was used: i. e. that the witness had lost his privilege and the admonition had been given.

There was no such admonition in the case at bar, and, although the accused did not ask for one, it appears to Judge Waterman and me that their failure to do so falls rather within Criminal Rule 52(b) than within Rule 30, 18 U.S.C.A. United States v. O'Connor, 2 Cir., 237 F.2d 466, 472. As *res integra*, it is doubtful whether such admonitions are not as likely to prejudice the interest of the accused as to help them, imposing, as they do, upon the jury a task beyond their powers: i. e. a bit of "mental gymnastics," as Wigmore § 2272 calls it, which it is for practical purposes absurd to expect of them. However, the situation is in substance the same as when a judge tells the jury not to consider the confession, or admission, of one defendant in deciding the guilt of another, tried at the same time; and, since it is settled that this rubric will cure that error (Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278), we do not see why it should not cure the error here. We rest our decision therefore upon the fact that the accredited ritual was not followed; and surely, if it is ever to be taken seriously, there could hardly be an occasion when it was more necessary, especially as to the refusals of Parkhurst and Silin whose corroboration of Parker touched upon the only possible source of jurisdiction over the subject matter: the use of the F.B.I. "credentials." The error makes unnecessary any discussion of the other points raised.

The judgment will be reversed and the cause remanded.

HINCKS, Circuit Judge (dissenting).

As I read Judge HAND'S opinion the reversal of the judgments below is based expressly and solely "upon the fact that the accredited ritual was not followed," i. e., the ritual of "a cautionary admonition by the judge to the jury that they must not use the [witnesses'] refusal [to answer] as evidence of what the answer would have been."

I agree with my brothers that the defendants were entitled to the cautionary admonition if they wished it; and that if it had been given it would have cured the defect on which the reversal is predicated. My dissent is restricted to the holding that whether requested or not, or whether wanted by the defendants or not, it was reversible error to omit the admonition. It seems to me clear that

in this case a judicial instruction not to consider or rely upon what the answers of the three witnesses might have been might well have stimulated the jurors to conjectures which otherwise would not have occurred to them. This my brothers seem to recognize: as Judge Hand points out, "it is doubtful whether such admonitions are not as likely to prejudice the interest of the accused as to help them * * * " I agree. If the admonition had been given without request, quite possibly on appeal the complaint would have been either that the judge was in cahoots with the prosecutor to bring about an unjust conviction or that he was a blundering fellow who inadvertently compounded prejudice by his good intentions. Cf. Becher v. United States, 2 Cir., 5 F.2d 45.

The effect of the admonition being doubtful, I would hold that it was for the defendants to decide for themselves whether the admonition would be helpful and, if so, to make request for it. Such a rule seems to me more consonant with rules of trial procedure which under federal criminal administration, and indeed generally under Anglo-Saxon jurisprudence, leave to the parties a wide choice of trial strategy. When incompetent evidence is offered it is not for the judge, like a paternalistic guardian, to decide whether it is better for a defendant to object or not to object. And the ensuing judgment will not be upset if the adverse party decides not to object and the judge of his own motion fails to exclude. Cf. Fed.Rules Cr.Proc., Rule 51; United States v. Rosenberg, 2 Cir., 195 F.2d 583, 596, certiorari denied 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 687. Under Rule 44, the defendant is allowed to decide for himself whether he shall or shall not be represented by counsel. And under Rule 23 it is for the defendant to decide, except in capital cases, whether he will waive his constitutional right to trial by jury. These elections and doubtless many others may have momentous impact on the outcome. Yet the law does not require the judge to make the decision for the defendant or to caution him in connection with the formulation of his choice.

Even closer to the present problem is that which arises when a defendant elects not to testify in his own defense relying on the statutory assurance, 18 U.S.C.A. § 3481, that his failure to take the stand "shall not create any presumption against him." In such cases it is often doubtful whether he will be helped or hurt by a judicial admonition that his failure to take the stand is not to be taken as evidence of guilt. Yet there is solid support for the view that an unrequested admonition, although not cause for reversal, is better omitted. United States v. Becher, supra; Pereira v. United States, 5 Cir., 202 F.2d 830, affirmed 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; and Kahn v. United States, 6 Cir., 20 F.2d 782. As to this Professor Wigmore goes even further and says: "Nor is it proper to go so far as to *instruct the jury* (even when no comment has been made) to disregard the inference * * ". Such comment, he says, "is merely futile, and tends toward confusion and disrespect for the law's reasonableness," 8 Wigmore on Evidence, page 416, quoting in footnote 7 from the opinion in Becher v. United States, supra. In Bruno v. United States, 308 U.S. 287, at page 294, 60 S.Ct. 198, at page 200, 84 L.Ed. 257, it was said (p. 294): "To the suggestion that it benefits a defendant who fails to take the stand not to have the attention of the jury directed to that fact, it suffices to say that, however difficult it may be to exercise enlightened self-interest, the accused should be allowed to make his own choice when an Act of Congress authorizes him to choose."

Believing that reason and authority unite in holding that the choice was one for the defendants, I turn to a view of the courtroom scene as reconstructed by the trial minutes to see which choice the defendants made. As to this, there was a complete absence of a request by any defendant for a cautionary admonition on each successive occasion when the

privilege was claimed; this absence continued thereafter throughout the trial and in the requests to charge; and there was no exception to the omission of the admonition in the charge. To me it seems clear that the defendants chose to waive their right to the admonition. It is plausible to believe that they thought an admonition would hurt them with the jury and an absence of admonition might help them on appeal. Under the circumstances, I think it would have been presumptuous for the trial judge to think that he knew better than the defendants where their interests lay, and that it was right for him not to admonish the jury at the risk of prejudice to the defense.

Even if the failure to give the unrequested admonition were error, I could not agree with my brothers that it was one falling within Fed.Rules Cr.Proc., Rule 52(b). For surely, if the defendants had thought an admonition would have been helpful, they would have requested it at some stage of the trial. Their failure to make such a request is eloquent evidence that they themselves thought the absence of an admonition was harmless. Moreover, the minutes of the trial show that each of the three witnesses were giving material testimony under oath in support of the Government's case until trial counsel for the defendant Merrick, wholly without right, 8 Wigmore on Evidence, § 2270, interrupted the prosecutor's examination to request the judge to instruct the witness of his (or her) constitutional rights. Under this prod, in which all defendants seemingly acquiesced, the privilege was claimed by each witness in turn. Thus the loss of opportunity to hear the answers under oath and to cross-examine thereon was brought about by a successful tactic of the defense. The error, if there was one, I would classify as harmless under Rule 52(a) and as foreclosed for lack of a request under Rule 30.

The defendants have advanced several other claims of error all of which, in my opinion, are without merit. I would affirm the convictions.