Scileppi, J. (dissenting).
We dissent. Under the circumstances of this case, the court’s clear and forceful instruction to the jury provided the appellants with sufficient protection so that the calling of Earl James to the witness stand by the prosecution did not constitute reversible error.
In Delli Paoli v. United States (352 U. S. 232), the Supreme Court dealt with an analogous situation. The petitioner was one of five codefendants convicted in a joint trial in a Federal court on a Federal charge of conspiring to deal in alcohol. The court admitted in evidence, without deleting references to petitioner, a confession of another codefendant, made after termination of the conspiracy. Although the court plainly charged the jury that the confession was to be considered only in determining the guilt of the confessor and not that of any of the other defendants, the petitioner, nevertheless, contended that the admission of the confession constituted reversible error. The Supreme Court rejected this contention, and said (p. 242): “ It is a basic premise of our jury system that the court states the law to the jury and that the jury applies that law to the facts as the jury finds them. Unless we proceed on the basis that the jury will follow the court’s instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense. Based on faith that the jury will endeavor to follow the court’s instructions, our system of *216 jury trial has produced one of the most valuable and practical mechanisms in human experience for dispensing substantial justice.”
In the case at bar, the court’s instruction to the jury was express, unequivocal, unambiguous and clear. In no uncertain terms it was impressed on their minds that they were to disregard James’ testimony in its entirety; that they were not to speculate on what he may have said had he answered; that “ by all means ” they were not to let his testimony “ be prejudicial to either of the defendants on trial ’ ’; and, finally, that neither the questions nor the answers constituted evidence in the case.
Doubtless, a curative charge is not a panacea for all error committed during a trial or for all prejudicial inferences which a jury might improperly draw from certain testimony but, in this case, we think the charge was sufficient to assure the appellants a fair trial.
After the usual formalistic questions—name, address, occupation—were asked of James, he was asked only two material questions by the prosecutor. The first, did he know Herbert Pollock, which he refused to answer on the ground that it might incriminate him, and the second, would he refuse to answer any other question on the ground that it might incriminate him, to which he answered, yes. Thus, this is not a case where question after question was asked in a blatant attempt to unduly prejudice the defendants in the minds of the jury. It is reasonable to assume that, under these circumstances, the jury could follow the court’s instruction and dispel any prejudice that may have resulted from the episode.
Indeed, in Namet v. United States (373 U. S. 179), relied upon by the majority, “ the U. S. Supreme Court appears to indicate that any prejudice that might result from such an examination can be cured by cautionary instructions to the jury” (United States v. Reincke, 354 P. 2d 418, 420).
Moreover, in Namet, the court made it clear (p. 186) that reversible error is not “ invariably committed whenever a witness claims his privilege not to answer”. Rather, said the court, depending upon the surrounding circumstances in each case, error may be based “ upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant *217 attempt to build its case out of inferences arising from use of the testimonial privilege ’ The court specifically pointed to United States v. Maloney (262 F. 2d 535), the prime case relied on by the majority herein, as a case involving prosecutorial misconduct. In Maloney, the court found not alone that the prosecutor called and questioned two key witnesses knowing that they would invoke their testimonial privilege, but that in his closing argument he. attempted to make use of the possible adverse inferences from their refusal to testify.
The present case, of course, is clearly distinguishable. The record discloses no prosecutorial misconduct—only two material questions were asked by the prosecutor, and he did not attempt to capitalize on the refusal to answer.
A second theory for finding reversible error, mentioned in the Namet case(supra, p. 187)—and apparently adopted by the majority of this court—“ seems to rest upon the conclusion that, in the circumstances of a given case, inferences from a witness’ refusal to answer added critical weight to the prosecution’s case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant ”.
The court again cited Maloney as a case where this theory seems to have been operative, for in Maloney the lower court noted ‘ ‘ that the challenged inferences were the only corroboration for dubious and interested testimony by the Government’s chief witness ” (373 U. S. 179,187, supra).
It is true, as the majority points out, that the conviction of appellants depended mainly upon their confession to the police. However, unlike the Maloney case, the inferences, which might have been drawn from James’ refusal to testify, were not the only corroboration for the confessions. The testimony of Ida Louise Johnson and Robert Waters, to the effect that, on the night of the alleged murder, they heard Pollock tell James “ that he just stuck up a store ”, that the man put up a good fight and that ‘ ‘ he stuck him ’ ’, clearly tended to corroborate at least the Pollock confession.
The most glaring distinction between this case and Maloney is that, notwithstanding all the theories upon which the court could have reversed, it chose to specifically rest its decision on the ground that a cautionary instruction would have cured the error but none was given.
*218 The remaining cases cited by the majority are clearly distinguishable and should not be controlling here. In United States v. Tucker (267 F. 2d 212) no cautionary instructions were given. In Fletcher v. United States (332 F. 2d 724) the prosecutor called to the stand a juvenile codefendant who had been sent to the National Training School. The prosecutor knew that he would assert his testimonial privilege, yet he flagrantly proceeded to ask him a long series of questions depicting the alleged offense in its entirety. In reversing the conviction, the appellate court noted (p. 727): “ We do not have to consider whether a clear, forceful instruction to the jury, precluding any inferences from Anderson’s refusals to testify, would have cured the prejudice inherent in the situation. The instruction, which we have quoted seems to have left the situation much in doubt.” In our opinion, the cautionary instruction in this case left nothing in doubt and was sufficient to afford the appellants, under all the circumstances, a fair trial.
In conclusion, we note that we find the People’s argument— “ that it was necessary for them to ” call James to testify as to the “ crime in order to be freed from any imputation that his testimony would be adverse to the prosecution” — to be valid. The majority suggests that some form of stipulation could have avoided the problem. Perhaps that would be true in another case, but not in this one. Here, the testimony of Ida Louise Johnson and Robert Waters told the jury that Pollock admitted to James that he had robbed a store and “ stuck ” “ a man ’’. The confessions of both appellants are replete with references to James. Surely if juries are made up of reasonably intelligent people, as we must assume they are, the jury in this case may well have wondered why the prosecution did not call James. And perhaps their wonderment would soon have changed to an inference that, had he been called, he would have testified against the prosecution.
Accordingly, the judgments appealed from should be affirmed.
Chief Judge Fuld and Judges Burke and Bergan concur with Judge Van Voorhis ; Judge Scileppi dissents and votes to affirm in a separate opinion in which Judges Keating and Breitel concur.
Judgments reversed, etc.