■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JULIUS LEBOVITZ, HENRY LEVINE, NATHAN M. WERTER and J. MORTON FINKE, Appellants. — Two judgments of the Supreme Court, Queens County, as to appellants Levine and Finke, respectively, rendered March 5, 1965, affirmed; and two judgments of said court rendered the same day, as to appellants Lebovitz and Werter, modified on the facts and in the interests of justice, by reducing their sentences to an indefinite term in the New York City Penitentiary and, as so modified, affirmed. After a jury trial, appellants Lebovitz, Levine and Werter were convicted of grand larceny in the first degree (two counts), conspiracy to commit grand larceny, forgery in the third degree, and conspiracy to commit forgery; and appellant Finke was convicted of conspiracy to commit grand larceny, forgery in the third degree, and conspiracy to commit forgery. In addition, the jury also found the Forest Hills General Hospital guilty, but acquitted three other codefendants. The theory of the prosecutor's case was that appellants, three of whom were officers and stockholders of the Forest Hills General Hospital and one of whom was its accountant, conspired to defraud and did defraud the Associated Hospital Service of New York (hereinafter referred to as "Blue Cross") by misrepresenting the actual operating costs of the hospital. This scheme was accomplished by disguising dividend payments to the hospital's stockholders as salaries for services performed, through false entries in the hospital's books and records and by means of false financial statements filed with Blue Cross. In our opinion, the evidence of appellants' guilt was convincingly established beyond a rea-

sonable doubt. There are, however, certain claimed errors presented by appellants which merit discussion. From the record it appears that three of the People's witnesses claimed their privilege against self-incrimination. Two of them, upon the prosecutor's request, were immediately granted immunity pursuant to section 2447 of the former Penal Law and directed to testify, which they did. The third witness (Warshawsky) was excused after having been asked only two questions. No admonition was given to the jury that no inferences were to be drawn by that witness's refusal to testify. Thereafter, one week later, Warshawsky was recalled to the stand and, upon being granted immunity, testified against appellants. While we believe that the jury should have been instructed that no unfavorable inferences were to be drawn from the witness's refusal to testify (cf. *People* v. *Pollock*, 21 N Y 2d 206; *United States* v. *Maloney*, 262 F. 2d 535), nevertheless, under the circumstances herein, it is our opinion that such failure did not constitute reversible error. Significantly, the prosecutor had only asked Warshawsky two questions which were designed to elicit only background information from him, to wit: whether he was the business manager of the hospital and whether he had attended certain meetings, when the witness was excused. This was, therefore, not a case where the prosecutor intentionally asked numerous questions in an attempt to unduly prejudice appellants in the minds of the jury. Thus, it cannot be said that the " 'inferences from  *  *  *  [the] witness' refusal to answer added critical weight to the prosecution's case  *  *  *  and thus unfairly prejudiced the defendant' " (*Douglas* v. *Alabama*, 380 U. S. 415, 420). Moreover, in *Namet* v. *United States* (373 U. S. 179, 186) the court made clear that reversible error is not "invariably committed whenever a witness claims his privilege not to answer". There is absent from this record the type of prosecutorial misconduct which was found in *United States* v. *Maloney* (*supra*). The two questions to which the witness claimed privilege were only incidental and collateral and, clearly, the error was not substantial enough to justify a reversal (cf. *United States* v. *Hiss*, 185 F. 2d 822, 832, cert. den. 340 U. S. 948). Furthermore, any error which may have been committed was obviated by the fact that the witness did testify one week later. His subsequent testimony eliminated any unfavorable inferences which could have been drawn from his prior claim of privilege (cf. *People* v. *Levy*, 15 N Y 2d 159). There are two additional claimed errors, among the many raised on this appeal, which require comment. It is contended that the trial court erred in instructing the jury with respect to the burden of proof and the failure of appellants to take the stand. At different times during the charge, the court properly instructed the jury that the refusal or neglect of any defendant to testify does not create any presumption against him; that the burden of proof remains with the People and may never be shifted to a defendant; and that it is a defendant's privilege and right to stand mute and not take the witness stand. The court further charged the portion thereof quoted in the dissenting memorandum. While we agree that it was not necessary to add anything to the plain language of the statute (*People* v. *McLucas*, 15 N Y 2d 167), we cannot agree with the dissenting members of the court that the additional words used in the charge tended to deprive appellants of the full protection of the statute. When considered in proper context, we are satisfied that no reversible error was thereby committed. Finally, appellants further urge that the court erred in charging the jury with respect to corroboration of accomplice testimony. The dissenting Justices are of the view that reversible error was committed because of the court's failure to "unequivocally add", as it had with respect to the defendants found to be accomplices as a matter of law, that the witnesses found to be accomplices as a matter of fact could not corroborate each

other and that independent evidence other than the testimony of other accomplices is required for conviction. In view of the fact, however, that it clearly appears from the record that the necessary corroboration is present not only in the testimonial evidence of disinterested witnesses but also in the documentary evidence introduced at the trial, we are of the opinion that the error may be disregarded as one not affecting the substantial rights of appellants (Code Crim. Pro., § 542). It is our view, however, that the interests of justice would best be served by reducing the sentences of appellants Lebovitz and Werter to an indefinite term in the New York City Penitentiary. Beldock, P. J., Christ and Munder, JJ., concur; Hopkins and Martuscello, JJ., dissent and vote to reverse the four judgments and order a new trial as to appellants, with the following memorandum: In our opinion, the judgments should be reversed and a new trial ordered, in the interests of justice, because of (1) the prejudice to appellants inherent in the circumstances under which the key prosecution witness first claimed the privilege against incrimination and then came to testify a week later under a grant of immunity, and (2) the cumulative effect of errors committed by the trial court during the course of the opening to the jury panel and the charge. With respect to the first ground, Norman Warshawsky, the key prosecution witness, was the second witness to claim the privilege against incrimination. The first, a doctor at the hospital, testified under a grant of immunity given by the court at the request of the District Attorney. Warshawsky, however, was the witness without whose extensive testimony it would seem to be extremely unlikely that the jury would have had a sufficient basis for finding appellants guilty. He alone of all the witnesses testified in depth as to the circumstances surrounding the formation and carrying out of the alleged scheme to defraud the Associated Hospital Service. Yet when he was first called to the witness stand, the District Attorney refused to request the court to grant him immunity under subdivision 2 of section 2447 of the former Penal Law in spite of the fact that it was revealed at a sidebar conference that the prosecutor had been advised some three days earlier of the intention of the witness to claim the privilege. Moreover, not only did the court refuse to allow the witness to make the claim out of the presence of the jury, as requested by appellants' counsel, but it failed to give them any precautionary instructions as to not drawing any unfavorable inferences from his failure to testify once he had claimed the privilege and been excused because the District Attorney had refused to request that he be granted immunity. The witness was then called to the stand a week later because the prosecutor "reconsidered * * * [his] position" and decided to request that he be granted immunity. In the jury's presence, Warshawsky initially refused to testify on the ground that the immunity conferred on him under section 2447 did not cover him for any possible perjury committed before the Grand Jury. The jury was then excused and the witness asked the court to advise him whether section 2447 conferred this immunity on him. The court refused to answer his question, but told him that he had been informed by the court as to his immunity and that he would be held in contempt of court unless he answered. Under these circumstances, Warshawsky had the right to believe that his immunity did not extend to perjury before the Grand Jury. Moreover, the failure of the trial court to specifically grant him immunity for possible perjury before the Grand Jury meant that his subsequent trial testimony, given under the guidance of the District Attorney, who constantly showed him the Grand Jury minutes in order to "refresh his recollection", was little more than a mere reiteration of his previous Grand Jury testimony without allowing defense counsel any meaningful opportunity for cross-examination as to his credibility. In

our opinion, the foregoing were not but "minor lapses" in the course of the trial, but a critical part of the People's case (cf. *United States* v. *Hiss,* 185 F. 2d 822, 832, cert. den. 340 U. S. 948; *United States* v. *Amadio,* 215 F. 2d 605, 613–614; *Namet* v. *United States,* 373 U. S. 179, 189; *Fletcher* v. *United States,* 332 F. 2d 724). The trial court should have charged the jury that they should not draw any inference from Warshawsky's failure to testify when he was excused from the stand after claiming the privilege (*United States* v. *Maloney,* 262 F. 2d 535; *People* v. *Levy,* 15 N Y 2d 159, 166); and its failure to do so meant (1) the jury had a week's time in which to weigh in their minds the implications of his failure to testify, i.e., was the witness a conspirator in the alleged scheme along with appellants? (cf. *People* v. *Ramistella,* 306 N. Y. 379, 383), and (2) the jury might well have given more significance to his subsequent testimony. Finally, assuming *arguendo* that this error was cured by Warshawsky's testimony, the fact still remains that the court failed to specifically grant the witness immunity, upon his counsel's request, for any possible perjury he might have committed before the Grand Jury (cf. *People* v. *Franzese,* 16 A D 2d 804), an immunity which the witness at the trial was entitled to under section 2447 (subd. 2) of the former Penal Law (*People* v. *Tomasello,* 21 N Y 2d 143, 150; see, also, *Matter of Grand Jury* [*Cioffi*], 8 N Y 2d 220, 224). The second ground for reversal is, as above stated, the cumulative effect of various errors committed by the trial court during the course of the opening to the jury panel and the charge. Thus, at the outset of the case the court informed the jury panel as follows: "The People are contending here that the Blue Cross, as we know it colloquially, to wit, the Associated Hospital Service of New York, was defrauded as a result of what they claim happened here. A lot of people in the courtroom, I am sure, are members of Blue Cross. You probably have the Blue Cross service and you will have to start with the premise here that if there was a fraud on the Blue Cross, it may mean that the cost of operation of Blue Cross went up and fees and rates went up accordingly. The same thing is true if we start with the trial of the larceny from the public treasury, stealing of money from the public treasury". In our opinion, the court erred in refusing to grant defense counsel's request, interposed at this point, that the jury panel be excused because of the prejudicial effect on them of the court's statement. Then, in its charge, the court gave this instruction with respect to the burden of proof and the failure of defendants to take the stand: "A defendant does not have to prove anything. It is his privilege and his right not only to stand mute and not take the witness stand but also to refrain from producing other witnesses *if* the People have failed to sustain the burden of proving guilt beyond a reasonable doubt" (emphasis added). In our opinion, it was erroneous to add the qualifying language beginning with the word "if" to the mandate of section 393 of the Code of Criminal Procedure, which provides that no presumption is created against defendants who do not take the witness stand (*People* v. *McLucas,* 15 N Y 2d 167, 171, and cases cited there). Finally, the court, in charging on corroboration of accomplice testimony, noted that Warshawsky and two other witnesses were accomplices as a matter of law and correctly charged that their testimony could not convict appellants (or their codefendants) without independent evidence tending to connect the latter with the crime in question. The court then further charged that the jury could find several other named witnesses to be accomplices as a matter of fact, but failed to unequivocally add, as it had with respect to the accomplices as a matter of law, that these "possible" accomplices could not corroborate each other and that evidence besides the testimony of other accomplices is required for conviction. In our opinion this was error, especially in light of

the fact that virtually all of the prosecution witnesses could have been found by the jury to have been accomplices (*People* v. *O'Farrell*, 175 N. Y. 323; *People* v. *Standish*, 5 A D 2d 726). While it can be argued that none of these errors, standing alone, would be sufficient ground to overturn the judgments of conviction, it is our opinion that their cumulative effect, when coupled with the court's errors in handling the witness Warshawsky's claim of privilege, is sufficient to warrant reversal and a new trial in the interests of justice.