Alex Shondor BIRNS, Petitioner-
Appellant,

v.

E. P. PERINI, Superintendent, Marion
Correctional Institution, Respondent-
Appellee.

No. 19790.

United States Court of Appeals,
Sixth Circuit.

June 5, 1970.

James R. Willis, Cleveland, Ohio, for appellant.

Leo J. Conway, Columbus, Ohio, for appellee; Paul W. Brown, Atty. Gen., Stephen M. Miller, Asst. Atty. Gen., Columbus, Ohio, on brief.

Before PECK, McCREE and COMBS, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Appellant was convicted in the state court of bribery and witness tampering. His conviction was affirmed by the Ohio Court of Appeals, and the Supreme Court of Ohio dismissed his appeal for want of a substantial constitutional question. His writ of certiorari to the United States Supreme Court was subsequently denied.

Appellant brought the present habeas corpus action in the District Court and it denied his writ without an evidentiary hearing after reviewing the transcripts and exhibits from the various proceedings held in the state courts. After an extended discussion of the ten issues presented in support of the writ the District Court found no basis for relief. This appeal followed.

The record sets forth these pertinent facts. On July 23, 1964, appellant was arrested after a raid and the police found numbers slips in his possession. An indictment was returned and on a motion to suppress evidence by appellant, the state court granted the motion because of a lack of probable cause for issuing the search warrant. This proceeding is hereinafter referred to as the "numbers case."

Thereafter, on November 20, 1964, appellant met a police officer, Bennett, in a restaurant and they arranged to meet there later. Police Officer Bennett had participated in the earlier numbers case raid. The meeting occurred on November 23, and Bennett had a transmitter on his person and another officer, Eschweiler, had a receiver and a tape recorder in his car outside the restaurant. During the course of discussion in the restaurant, appellant gave Bennett $200 and said it was a Christmas present for his wife and children. Bennett and Eschweiler testified that appellant wanted some information concerning the numbers case against him. At a prearranged signal, Eschweiler came into the restaurant and arrested appellant.

After the trial, appellant sought a new trial based on newly discovered evidence. The motion was denied. The evidence, known by the prosecutor at trial but undisclosed to appellant, was that Eschweiler, while monitoring the conversation of appellant and Bennett, was involved in an auto accident and was absent from his auto for a period of time. Eschweiler was a corroborating witness for the State.

Appellant sets out nine grounds for relief on his appeal to this Court. We have reviewed all of them and find that none of the grounds provide a basis upon which the writ can be granted. We, however, do find that several of appellant's contentions merit discussion.

The first of these is that evidence suppressed in the numbers case was improperly admitted in his trial for bribery ·and that it was error for the trial court in the bribery case to allow the jury to view the premises where the appellant was arrested in the numbers case. Appellant states that the trial court allowed extensive testimony by a police officer involved in the search concerning the suppressed items, their functions, and the background of the search. The police officer is not named, so it is unclear as to which of the several officers appellant is referring to here. We assume that appellant refers to the testimony of Police Officer Denver who testified for the State as an expert in numbers operations. The District Court addressed itself to the testimony of Police Officer Bennett. We will consider the testimony of both of these witnesses. The State contends that the testimony concerning the raid was proper in that it established a motive for the alleged bribe, and further that it was the appellant who first elicited testimony from

Bennett concerning the suppressed evidence, and it merely stepped through the open door to clarify the matter.

Appellant's contention is that under the exclusion rule, illegally acquired evidence should not be used at all.[1] Silverthorne Lumber v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed.2d 319 (1920). The State contends that in certain limited situations, as in this case and in Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), previously suppressed material can be introduced in another trial. In *Walder*, the Court held that the prosecutor was permitted to contradict the untrue statements made by the defendant on direct examination by using for impeachment purposes on cross-examination evidence that was not directly related to the offense charged and which had been seized in violation of the Fourth Amendment. The Court distinguished the situation found in Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), where on cross-examination of the defendant the government sought to introduce suppressed evidence to discredit him. In *Agnello* the Court stated that the suppressed evidence was not admissible in rebuttal since the defendant did not testify about this evidence on direct and that "he did nothing to waive his constitutional protection or to justify cross-examination in respect of the evidence claimed to have been obtained by the search." 269 U.S. at 35, 46 S.Ct. at 7.

■ The exclusionary rule concerning the use of suppressed evidence is without application when the defendant either waives his protection under the rule or is in some manner estopped from objecting to its use. We note that this is not the usual case where the suppressed evidence was introduced for the purpose of proving the crime for which

the search was conducted, but rather, the testimony concerning the suppressed evidence was used in a case dealing with another crime. This suppressed evidence was also not directly related to the guilt or innocence of appellant on the charge of bribery.

The State contends that it used testimony of the raid in the numbers case for the purpose of showing a motive for the alleged bribe. Appellant's position is that nothing more than the introduction of the indictment in the numbers case was necessary for this part of the State's case. The trial court stated that something beyond the indictment was needed to show the participation of Police Officer Bennett in that raid because the charge relating to bribery stemmed from the numbers case, and that it "attempted to maintain a fine line without retrying the numbers case." The District Court found, and we agree, that the State could not have proved its case without a reference to the raid and to the numbers case.

■ Appellant's objection to the testimony of Police Officer Denver concerning the operation of the numbers game is not well founded. The Ohio Court of Appeals found that this testimony was proper under the circumstances when it stated:

"Such property [the suppressed evidence] was not offered or received in evidence in this case. There is no doubt but that Birns brought into the case the matter of his involvement in numbers operations so that evidence as to the manner in which such a lottery is operated was clearly proper." State v. Birns, 10 Ohio App.2d 103, 109, 226 N.E.2d 149, 153 (1967).

■ The District Court found that the more offensive testimony concerning the suppressed evidence came from Officer Bennett. On direct examination,

---

1. This includes both physical objects illegally taken and the introduction of testimony concerning objects illegally observed. Williams v. United States, 105 U.S.App.D.C. 41, 263 F.2d 487, 489 (1959), cert. denied, 365 U.S. 836, 81 S.Ct. 751, 5 L.Ed.2d 746 (1961); McGinnis v. United States, 227 F.2d 598, 603 (1st Cir. 1955).

Bennett was not questioned concerning what was observed or what was seized, but he did state, in answer to a question, that the raid took place and that the evidence was gathered. The State did not inquire further regarding these matters. Appellant was the first to elicit testimony from Bennett concerning the suppressed materials of the raid in the numbers case, and as found by the District Court, the State quickly stepped through the open door. The State contends that it merely clarified the matter for the enlightenment of the jury after appellant initiated inquiry of this matter. The function of the exclusionary rule is to protect the appellant and to prohibit the prosecution from introducing evidence obtained in an illegal search and seizure, but when, as here, the appellant chose to open inquiry of suppressed matters on cross-examination of the State's witness Bennett, he cannot be heard to complain that the State pursued it. We find that it was proper under the circumstances for the State to use Bennett's testimony to rebut that which was brought out on cross-examination by the appellant.

■ The District Court stated that the view of the premises where the numbers operation was raided by the police could be considered to be the admission of evidence. The Court went on to say that if there was error in allowing this view of the premises, it was harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), since none of the evidence introduced bore upon the physical arrangement of the premises. The state trial court charged the jury that the view was not evidence. We agree with

the District Court that if there was any error in permitting the jury to view the premises, it was harmless error.

Appellant's next contention is that the State suppressed evidence beneficial to him when it failed to disclose Eschweiler's involvement in an automobile accident which caused him to be absent from his car while he was monitoring the conversation between appellant and Bennett. The District Court found that the prosecutor at trial did know of the accident and failed to either disclose this fact to the appellant or to offer evidence concerning it. By this suppression, appellant contends that his constitutional rights were infringed, even though it only goes to the credibility of a witness (Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)), and he argues further that the state courts failed to apply the proper test for the effect of a federal constitutional violation as set forth in *Chapman.*

■ Appellant's reliance on *Napue* is misplaced since that case was not concerned with the failure to disclose evidence of value to the accused, but dealt with a situation where the prosecutor knowingly failed to correct false testimony of a state witness.[2] In the present case, there was no false testimony given.[3] We likewise do not have before us a case where the prosecutor has concealed direct evidence bearing on the crime by failing to disclose to the defense the existence of a witness that would have been beneficial to the accused in his defense. *See, e. g.,* Lessard v. Dickson, 394 F.2d 88 (9th Cir. 1968); United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964). The District Court accepted, as we do, the

2. The Supreme Court in Giles v. Maryland, 386 U.S. 66, 74, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), declined to rule on the extent of the prosecutor's constitutional duty to disclose all evidence admissible and useful to the defense, and on the degree of prejudice necessary for a granting of a new trial.

3. The District Court found that Officer Eschweiler did not commit perjury since

he was never asked whether he heard the whole conversation or whether he left the car, and that Eschweiler testified only as to what he had heard. The State's evidence was that Eschweiler was absent from his listening post for only five or ten minutes, so that little of the conversation was missed. Appellant contended that his witnesses placed Eschweiler outside his auto for over thirty minutes.

State's contention that Eschweiler merely corroborated Bennett's testimony, and that he testified only to what he heard of the conversation which was the discussion concerning the alleged $200 bribe and appellant's request for help from Bennett in the numbers case. It is further apparent that Eschweiler's absence from the auto had no direct bearing on the guilt or innocence of the appellant since the suppressed matter could only be used to impeach the testimony of this corroborating witness. Further, and more importantly, appellant's own testimony concerning the events that took place in the restaurant while he was with Bennett is in substantial agreement with the testimony of Bennett and Eschweiler (State v. Birns, 10 Ohio App.2d at 110, 226 N.E. 2d 149, 154), and it is here concluded that in the absence of any claim of discrepancy the failure to disclose Eschweiler's absence from his listening post was "harmless beyond a reasonable doubt." *Chapman, supra.*

The final issue to be considered deals with appellant's contention that he was denied a fair trial when he was asked certain questions by the State on cross-examination. Appellant contends that these questions were designed to require him to invoke the privilege against self-incrimination, since the State was on notice that asking such questions would cause appellant to rely on the privilege. At the time of appellant's trial for bribery, the Federal Grand Jury was engaged in an investigation of possible income tax violations by him. The District Court found that the questions complained of were relevant,[4] and that the trial court apparently believed that appellant had by his answers opened the door to questions as to his income, but had not waived the protection of the privilege.

The District Court held that the asking of these questions by the State was not constitutional error. The Court supported its conclusion by noting that petitioner invoked the privilege relatively few times; petitioner by his testimony made the subject relevant; and petitioner took the stand knowing that he might be asked questions with reference to which he would want to invoke the privilege.

Appellant contends that this situation differs only in form from that in which the prosecution puts a witness on the stand after having notice that the witness would assert his privilege, and relies on United States v. Maloney, 262 F. 2d 535 (2d Cir. 1959). There the government attempted to build its case on inferences from the use of the privilege and the Court held that this conduct constituted reversible error. The Court found that the answers sought would have corroborated the testimony of the government's principal witness, and that the government knew that two of the three witnesses called would refuse to answer. The Court stated that the government's summation was in such a context that it could have been understood only as arguing that if the witness had not refused to answer, the answer would have been in the affirmative, and that "[s]uch refusals [to testify] have been uniformly held not to be a permissible basis for inferring what would have been the answer, although logically they are very persuasive." 262 F.2d at 537. Of like import is United States v. Compton, 365 F.2d 1, 4 (6th Cir.), cert. denied, 385 U.S. 956, 87 S.Ct. 391, 17 L. Ed.2d 303 (1966).

We do not consider *Maloney* and *Compton* to be in point, and decline to extend their doctrine beyond the orbit of their facts. We find that, unlike the *Maloney* and *Compton* situations, there

---

4. On cross-examination these two exchanges took place:

   "Q. Do you have any source of employment or financial income other than Port Wellington Quarries at the present time?

   "A. That is it."

       \*      \*      \*      \*      \*

   "Q. The quarries, and nothing else?

   "A. That is correct."

was not any "conscious and flagrant" attempt by the State to build its case out of inferences arising from the use of the privilege and that any inference from appellant's refusal to answer did not add "critical weight" to the State's case.[5] We further find that the questions objected to by the appellant did not amount to a deliberate attempt by the State to cause appellant to invoke the privilege and hold that the District Court was correct in finding no constitutional error that deprived appellant of his right to a fair trial.

Affirmed.

---

5. See Namet v. United States, 373 U.S. 179, 186–187, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), where the Supreme Court discusses *Maloney* and these two factors which suggest error. See also United States v. Tucker, 267 F.2d 212, 215 (3d Cir. 1959).