**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold James TAYLOR and Woodrow Hunter, Defendants-Appellants.**

No. 74–2198.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1975.

David B. Byrne, Jr., Montgomery, Ala., for Taylor.

Michael I. Kent, Opelika, Ala., for Hunter.

Ira DeMent, U. S. Atty., Wade B. Perry, Jr., D. Broward Segrest, Asst. U. S. Attys., Montgomery, Ala., for plaintiff-appellee.

Before BELL, AINSWORTH and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Woodrow Hunter and Harold James Taylor were convicted of the armed robbery of the Tuskegee Institute Branch of the City Bank of Tuskegee, Alabama, a bank with federally insured deposits. 18 U.S.C.A. § 2113. We affirm the conviction of Hunter against several alleged trial errors. We reverse as to Taylor on the ground that the prosecution placed before the jury a statement of Hunter's implicating Taylor, which the Government in a successful effort to avoid a severance of the two cases had agreed not to introduce into evidence, and which violated Taylor's Sixth Amendment right to confrontation under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

About 9:30 in the morning on February 4, 1974, the Tuskegee bank was robbed of $11,375 by two armed men wearing masks and protective clothing so that none of their flesh was exposed. The Government obtained the defendants' convictions with the circumstantial evidence of seventeen witnesses and forty-five exhibits.

### Woodrow Hunter

Woodrow Hunter raises six points on this appeal. A complete reading of the transcript of the pretrial and trial proceedings, a study of the briefs, and a review of the oral argument convinces us that Hunter's conviction should be affirmed.

In accordance with our Local Rule 21, we dispense with a written opinion in connection with all but one of the points raised by Woodrow Hunter because the evidence in support of the jury verdict is not insufficient, no error of law appears, and we determine that an opinion would have no precedential value. In so doing, we find that *first*, the trial judge did not so identify himself with the prosecution, engage in conduct, or make comments that affected a fair trial; *second*, there was not such prosecutorial misconduct as

to constitute a violation of due process; *third*, there was no error in the admission of various photographs which were used to indicate the height of the bank robbers, contrary to two points asserted by Hunter; and *fourth*, the trial court properly instructed the jury as to the elements of the offense.

■ As to the denial of Hunter's motion to suppress statements made to the F.B.I. on the ground that Hunter was under the influence of drugs at the time, there was no positive testimony as to whether the amount of heroin or LSD or both that Hunter had allegedly consumed prior to the statements would affect his voluntariness and reliability. The resolution of this fact issue depended upon a credibility choice among several witnesses. The district court decided the issue against Hunter, there is ample evidence to support the decision, and no room is left for interference by a reviewing court. The mere fact that the defendant had taken drugs prior to giving the statement does not render it inadmissible. The evidence must show the defendant was so affected as to make his statement, after appropriate warnings, unreliable or involuntary. *See* United States v. Welsh, 417 F.2d 361 (5th Cir. 1969); Ortiz v. United States, 318 F.2d 450 (9th Cir. 1963), cert. denied, 376 U.S. 953, 84 S.Ct. 971, 11 L.Ed.2d 972 (1964).

### Harold James Taylor

Crucial evidence against Harold James Taylor was given to the jury when F.B.I. Agent Byrne testified that Hunter told him that "he and Taylor had hidden the clothes that they used and gun under an abandoned house." The statement was anchored in the jury's mind when the prosecutor asked, "And who was the Taylor that Hunter was referring to?" and received the reply that "Harold Taylor is the man he said."

Because Taylor's separate counsel was concerned that a statement by Hunter inculpating Taylor might be used against his client, he moved for severan · prior to trial. Defendant Taylor would apparently have been entitled to a separate trial under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* held that the admission of a confession made by a co-defendant implicating the defendant, where the co-defendant did not take the stand, violated the defendant's right to cross-examination secured by the Confrontation Clause of the Sixth Amendment.

In the hearing on this motion, the Government reported that of the three statements which Hunter had made to the F.B.I., only one inculpated Taylor. To avoid a severance and the *Bruton* problem in a joint trial, Government counsel told the court that, in this third statement, "there is material which might, arguably, incriminate Taylor. For that reason we will not use the third statement. Therefore, I think there are no Bruton grounds left in the case."

"THE COURT: You mean you will not use the third statement if they are tried together?

MR. PERRY: Yes, sir, if they are tried together, and if Hunter does not take the stand.

There is no dispute that the statement testified to by the F.B.I. agent at the trial was in the "third statement."

■ Seeking to justify its violation of the agreement not to use the statement by Hunter against Taylor, and prevent reversal under *Bruton*, the Government asserts that the incriminating statement was not used on direct, but only upon redirect after Taylor's counsel had "opened the door" to inquiry about the third statement. The Government relies on several cases which have held that a defendant cannot obtain reversal because of the admission of otherwise inadmissible evidence where the defendant himself has opened up the constitutionally forbidden subject matter. Sometimes called the doctrine of invited error, the accepted rule is that where the injection of allegedly inadmissible evidence is attributable directly to the action of the defense, its introduction does not constitute reversible error. *See generally* Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); Birns v.

Perini, 426 F.2d 1288 (6th Cir. 1970), cert. denied, 402 U.S. 950, 91 S.Ct. 1609, 29 L.Ed.2d 120 (1971); United States v. Fioravanti, 412 F.2d 407 (3rd Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969). Though the Government argues that cross-examination of the agent by Taylor's counsel placed the "third statement" in issue and opened the way to interrogation about it on redirect examination, the record neither supports the argument factually nor justifies the application of the principle asserted by the Government.

Prior to the testimony of the agent, another witness testified that one of the weapons used by the robbers was a sawed-off shotgun, possibly double-barrelled. The F.B.I. agent testified on direct examination that he found a sawed-off rifle, which certain witnesses then identified as the weapon. On cross-examination, defense counsel for Taylor was trying to develop the inconsistency between a shotgun and a rifle and this exchange resulted:

Q. . . . [D]id you ask them to explain the inconsistency between this and a double barrel shotgun or a shotgun?

A. I didn't talk with any of those people that you say described the weapon. It was described to me as a rifle, sawed-off rifle, and that's what I was looking for, a rifle.

Q. And when and who provided you with a description that the item you were looking for was a sawed-off rifle?

A. Woodrow—(interrupted).

Q. Other agents of the FBI?

Mr. Segrest (Government counsel). No sir, he asked the question we request that he allow the agent to answer the question.

The Court: Yes, sir, let him answer.

A. Woodrow Hunter.

■ Because it was Hunter's "third statement" which contained the information about the rifle, the Government argues that this brief exchange opened the door to bringing in the incrimination of Taylor by Hunter on redirect examination of the Government witness. The argument is unsound for several reasons: *first*, the trial court, after an "off-the-record" bench conference, sustained an objection to the Government's next question after the incrimination of Taylor: "All right, what else did Hunter tell you on that day?" Although an "off-the-record" bench conference prevents us from discerning the basis of the court's ruling, it can be assumed that by directing "the attorneys not to go into that particular statement further" the court was unpersuaded by the Government's argument that the door had been opened. *Second,* the Government had never shown Hunter's statements to Taylor's attorney, so he had no way to know that asking about the sawed-off rifle would lead the witness into the third statement. Since the application of the invited error rule here would be tantamount to a waiver of the Sixth Amendment right to confrontation, a purposeful rather than inadvertent inquiry into the forbidden matter must be shown. *Third*, there was no reference to a "statement" as such, so the jury was not left to speculate on the remainder of the statement with possible adverse consequences to the prosecution. *Fourth*, the testimony that Hunter told of the sawed-off rifle was understandable on its own, negating any argument that the complete statement should be admitted for proper understanding of the testimony given. *Fifth*, while the Government was helped in its case against Hunter by the answer on redirect, it was completely unharmed in its case against Taylor, so the Government had no need to develop further the third statement. There was no evidence before the jury to indicate that Woodrow Hunter would exculpate Taylor from the robbery, which might justify exploration of the incriminating statement upon the Government's interrogation of the witness. In short, the trial court apparently did not think that Taylor had invited error, opened the door, or waived his rights under the Confrontation Clause of the Sixth Amendment, and neither do we. We hold, therefore, that the testimony of the

agent concerning that part of Hunter's "third statement" which inculpated Taylor denied Taylor his constitutional right to confront and cross-examine his accuser.

Taylor asserts that the district court erred in failing to limit the effect of the agent's testimony by proper instruction. The *Bruton* decision teaches us that such limiting instruction would probably not have been an adequate substitute for Taylor's rights under the Confrontation Clause of the Sixth Amendment even had it been given. Before violating its agreement with the court and the defendant not to introduce the co-defendant's incriminating statement, Government counsel should have sought a ruling from the court outside the hearing of the jury and should not have plunged the trial into possible error, irretrievable under *Bruton*.

■ The Government's argument that no objection was made to the question which brought forth the damaging answer fails for two reasons: *first*, since defense counsel had not seen the statements, there was no way for him to know what Government counsel well knew, that the inquiry of the witness concerned the incriminating third statement; and *second*, the defendant had every right to rely on the Government counsel's agreement. The following exchange facially shows, as far as it would appear to defense counsel and the court, the Government counsel could have been inquiring as to the first or second statement on his initial question. By the time the second question was asked, the trial was irreparably damaged.

(By Mr. Perry, Government counsel) Q. Now Mr. Byrne asked you what investigation you had done and how you learned the location of that rifle. What else did Hunter tell you?

A. Well, I interviewed Mr. Hunter on the same day the 15th and he told me that he and Taylor had hidden the clothes that they had used and gun under an abandoned house.

Q. All right, and who was the Taylor that Hunter was referring to?

A. Let's see, Harold Taylor is the man he said.

Q. All right, what else did Hunter tell you on that day?

A. He told me that (interrupted Mr. Kent: We object. Mr. Byrne: May we approach the bench. All counsel went to the bench. Pause in time). The Court: I will overrule the motion as to the previously entered evidence. I will sustain the objection to the present question and direct the attorneys not to go into that particular statement further.

■ We have reviewed the transcript to determine whether the agent's testimony concerning Hunter's "third statement" was harmless error. If there were overwhelming evidence against Taylor, and if the agent's statements were merely cumulative, and not controlling evidence of Taylor's involvement in the armed robbery of the Tuskegee bank, the conviction might be affirmed under the harmless error rule. *See* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Hoover v. Beto, 467 F.2d 516 (5th Cir.) (en banc), cert. denied, 409 U.S. 1086, 93 S.Ct. 703, 34 L.Ed.2d 673 (1972).

Although the record may well contain enough evidence other than the incriminating statement to support the jury conviction under the substantial evidence rule, we do not find the evidence so overwhelming as to demand a verdict against Taylor. We cannot say the erroneous admission of the incriminating statement was harmless error. Our affirmance of Hunter's conviction will necessarily give Taylor the separate trial he requested upon retrial, regardless of the Government's predisposition as to use of the incriminating statement.

We reverse the conviction of Harold James Taylor and remand for a new trial. It is unnecessary for us to rule upon the other points of error asserted by Taylor.

Affirmed as to Hunter.

Reversed and remanded as to Taylor.