Affirmed and Opinion filed July 24, 2003
















Affirmed and
Opinion filed July 24, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-99-00515-CR

____________

 

CHARLES HINES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_______________________________________________________________________

 

On Appeal from
the 248th District Court

Harris County, Texas

Trial Court
Cause No. 790,576

 

_______________________________________________________________________

 

                                          O P I N I O N  
O N   R E M A N D

            Appellant Charles Hines was
convicted by a jury of aggravated kidnapping and sentenced to twenty-seven
years’ imprisonment.  On direct appeal
from his conviction, appellant challenged the legal sufficiency of the evidence
and argued that the trial court erred by: 
(1) allowing statements of confidential informants without revealing
their identities; (2) admitting appellant’s oral and written statements; and
(3) failing to instruct the jury on the lesser included charge of
kidnapping.  This court issued its
opinion reversing appellant’s conviction on the grounds that the evidence was
legally insufficient to prove aggravated kidnapping because appellant did not
“interfere substantially” with complainant’s liberty as 








required
by Tex. Pen. Code §
20.01(1).  See Hines v. State, 40 S.W.3d 705, 713–14 (Tex. App.—Houston [14th
Dist.] 2001), rev’d,
75 S.W.3d 444 (Tex. Crim. App. 2002).  We determined that the term “interfere substantially”
required “more than temporary confinement or slight movement” of the
complainant.  Id.  The Court of Criminal Appeals reversed and
held that the term “interfere substantially,” as used in the Texas kidnapping
statute, is unambiguous and does not require a showing of “more than temporary
confinement or slight movement.”  Hines v. State, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002). 
The court further found the evidence presented at trial was legally
sufficient to sustain the verdict and remanded the case for consideration of
appellant’s remaining points of error.  Id. at 448.

                                                             I. 
Background

            On June 29, 1998, Rebecca Thornton, a teller at
Klein Bank, arrived at work to open the bank for the day’s business.  As she approached the front door, two men
emerged from the bushes and told her to unlock the door.  Both men were dressed in black clothing and
wore ski masks and gloves; one of them carried a shotgun.  Thornton entered
the bank and attempted to lock the door behind her.  One of the men placed the barrel of the
shotgun between the doors, pried the doors open, and grabbed Thornton by the
throat.  The gunman ordered Thornton to show
him the alarm mechanism and instructed her to disarm the alarm system.  When Thornton
encountered difficulty disarming the system, the gunman threatened to shoot
her.  After Thornton disarmed
the alarm system, the gunman told Thornton to lead
him to the vault, which was near a large window.  At about that time, Thornton saw
another teller, Darlene Standlee, arriving at the
bank.  The men instructed Thornton to signal
to Standlee to enter the bank.  Instead, Thornton mouthed to
Standlee, “don’t come in.”  Standlee, who is
partially deaf and reads lips, understood Thornton’s warning
and began to run.  As the two men pursued
Standlee, Thornton escaped
through a back entrance and left to seek assistance.

            Once outside the bank, the men
ordered Standlee to halt.  Fearing for her life, Standlee
did as instructed.  The men grabbed Standlee by the back of her neck, forced her into the bank
and ordered her to open the vault.  Standlee disarmed and opened the vault, and the men began
placing money in a bag.  The men then
realized Thornton was no
longer in the bank, and quickly fled with approximately $33,000.

            Appellant was subsequently charged
with the aggravated kidnapping of Thornton.  He was also charged with the aggravated
robbery of Standlee. 
While both offenses were tried together, appellant appealed his
conviction for aggravated robbery separate and apart from his appeal of the
aggravated kidnapping conviction.  The
aggravated robbery conviction is not at issue in this appeal; however,
appellant raises substantially similar points on both appeals.  See
Hines v. State, No. 14-01-00514-CR, 2001 WL 363644, *1 (Tex. App.—Houston [14th
Dist.] April 12, 2001, no pet.)
(not designated for publication).  In
affirming his conviction for aggravated robbery, we found the trial court did
not err in refusing to allow identification of the confidential informants,
properly admitted appellant’s statements, and properly denied appellant’s
requested instruction on the lesser included offense of robbery.  Id.  We now turn to appellant’s remaining three
points of error in this appeal.

                                                               II. 
Discussion

                                 A.  Testimony Regarding Confidential Informants

 

            In his second, multifarious point of
error, appellant argues the trial court erred in (1) admitting the statements
of the confidential informants through the testimony of the investigating
officer; (2) refusing to disclose the identity of the confidential informants;
and (3) refusing to permit appellant to review the informants’ statements in
order to cross-examine the accuracy of the statements.

                            1.  Admission of Statements of
Confidential Informants

            Appellant first argues the trial
court erred in allowing testimony describing 
statements made by the confidential informants.  At trial, Harris County Sheriff’s Department
Detective Shane McCoy testified regarding information acquired from
confidential informants linking appellant to the Klein Bank robbery.  Appellant objected on the grounds that the
testimony interfered with his Sixth Amendment right of confrontation and was
therefore inadmissible. However, otherwise inadmissible evidence may be
admitted if the party against whom the evidence is offered “opens the door,”
provided the party offering the evidence does not stray beyond the scope of the
invitation.  Schutz v. State, 957 S.W.2d 52, 71 (Tex. Crim.
App. 1997); Ex parte
Wheeler, 61 S.W.3d 766, 772 (Tex. App.—Fort Worth 2001, pet. filed);  Heidelberg
v. State, 36 S.W.3d 668, 672 (Tex. App.—Houston [14th
Dist.]2001, no pet).  We conclude
appellant opened the door to the testimony he claims was violative
of the confrontation clause.

            The State’s direct examination of
McCoy focused on the existence of the confidential informants and how their
statements led to a finding of probable cause sufficient to seek a warrant to
arrest appellant.  McCoy testified as
follows:

            Q.        In
response -- or at some point after this time, did you get a tip on this
robbery?

            A.        Yes, ma’am, I did.

            Q.        And the tip was a female or male?

            A.        I would
rather not say because it was a confidential informant.

            Q.        Okay.  I’m sorry. 
Based on this tip, did you check out this tip?  Did you decide to determine whether it was
credible or not?

            A.        Yes, ma’am, I did.

            Q.        Okay. 
Did that tip lead you to another informant?

            A.        Yes, ma’am, it did.

            Q.        Did you check out that informant?

            A.        Yes, ma’am, I did.

            Q.        Did you determine if they were credible
and reliable?

            A.        I believe they were.

            . .
.

            Q.        Okay.  After you got this information checked out to
be credible and reliable, did you proceed to get an arrest warrant based on
probable cause?

            A.        Yes, ma’am, I did.

            Q.        And did you get that warrant?

            A.        Yes, ma’am, I did.

            . .
.

            Q.        Did you
attempt to serve – well, let me ask you this: 
Who did you develop as one of the suspects based on that information?

            A.        The
defendant in this case.

McCoy’s
direct examination addressed only the probable cause to arrest appellant and
was therefore admissible.  See Lillard v.
State, 994 S.W.2d 747, 751 n.6 (Tex. App.—Eastland 1999, pet. ref’d) (observing that “the statement of a confidential
informant, when offered to establish probable cause, is not considered hearsay”
because “[t]he statement is not offered for its truth but to show why an
officer sought, and a magistrate issued, a search warrant”).  The State did not question McCoy regarding
the substance of the statements by the confidential informants.

            On cross-examination, appellant’s
counsel questioned McCoy regarding the confidential informants, apparently
seeking to ascertain their identities. 
The following exchange took place:

            Q.        You say that you relied upon a
confidential informant; is that right?

            A.        I relied upon two confidential
informants.

            Q.        One of them being Shauntel?

            A.        No,
sir.  She was not a confidential
informant.  She gave me a notarized
statement at a later date, but she was not a confidential informant.

            . .
.

            Q.        Now, you
stated that there was no money given to any of the confidential informants, or
was there money actually given to them?

            A.        To my knowledge, there was none given,
sir.

            . .
.

            Q.        Did the confidential informant that you
were relying upon have any pending charges?

            A.        I would rather not say that sir.

                        I
think that would give information out, your Honor.

            Q.        Your
Honor, I think it’s important that the jury know what we’re relying upon, the
credibility of the person.  He stated on
direct examination –

            Court: The Court’s
already ruled that the confidential informant does not have to be named.

            Q.        Did you make any deals whatsoever with
the confidential informant?

            A.        With either of the two?  No, sir, I did not.

            . .
.

            Q.        Now, the
confidential informant had to have been there in order to give a statement,
right?

            A.        Which confidential informant are you
referring to?

            Q.        To give
this -- to lead you to believe it was Hines, wouldn’t he have -- he or she
would have to give you a detailed statement, right?

            A.        We have
two confidential informants.  You’re
referring to either one of them, sir?

            Q.        Either one.

            A.        And you’re asking me were they at the
crime scene that day?

            Q.        Yes.

            Court: Court’s already ruled on this. 
The confidential informant does not have to be named.

            At this point, appellant’s counsel
had not yet elicited a response from McCoy regarding the substance of the
informants’ statements.  The questioning
was directed toward ascertaining the identities of the informants.  However, appellant’s counsel then questioned
McCoy regarding the extent of available evidence connecting appellant with the
robbery.

            Q.        The only
thing that ties him to the Klein Bank on this date of the offense is this
statement --

            A.        No, sir.

            Q.        -- is that right?

            A.        There’s
more information than that.  I have a
statement from a confidential informant and I have an oral statement of another
informant.  And then I have the statement not to tie in, but showing his tie-in
with Hines, his oral statement that Mr. Hunt said he knew him.

(emphasis
added).

            After McCoy made these statements,
appellant’s counsel asked to approach the bench and made the following
objection:

Mr. Keele: I’m going to have to object to
this confidential informant.  We’re
getting testimony as far as through his confidential informant out of the
testimony of this witness.  So I’m going
to object.

The
Court: Note your objection, though.

Mr. Keele: Because I haven’t been given this
information about the confidential informant. 
And I can’t do proper cross-examination on this person here unless these
informants are here.  I know that you have
already ruled.  I just wanted to state
the objection.

The Court: What you’re saying is that you want the confidential
informant named?

Mr. Keele: Yes.  Exactly. 
I need the right to cross-examine that person.

The Court: Court’s not going to allow it.  Note your objection.  Note your exception.

Mr. Keele: Can I get a ruling on that?

The
Court: That’s what is called a ruling.

 

            In sum, appellant’s counsel asked
McCoy if it was correct that there was only one piece of evidence connecting
appellant to the bank on the relevant day. 
In so doing, appellant invited the witness to comment upon all of the
evidence that did tie appellant to the bank on the date of the offense in
question.  Responding to a question which
asked if a particular statement was the only evidence tying appellant to the
offense, McCoy explained that the informant’s statement “[shows] his tie-in
with Hines” and in so doing described the substance of the statements.  Indeed, McCoy gave a reply which encompassed
more than the mere existence of a confidential informant and his use in
determining probable cause.  See Lillard,
994 S.W.2d at 751–52. We find appellant’s counsel opened the door to the
substance of the confidential informant’s statements, and furthermore, that
McCoy did not stray beyond the scope of the invitation.  All prior questioning of McCoy was limited to
the mere existence of the confidential informants, their relation to the basis
of probable cause for appellant’s arrest, and appellant’s attempt to extract
the identity of the informants.  The
inquiry regarding 

 class=Section3>

the
extent of evidence connecting appellant to the robbery invited a response from
McCoy which included the substance of the informants’ statements.  McCoy responded within the scope of
appellant’s questioning, and the testimony was admissible.  Although he waited until after the witness
answered the question to object, appellant did not object on the grounds of nonresponsiveness, nor did he ask that the testimony be
stricken from the record.[1]  Rather, he merely renewed his earlier
objection that he was entitled to the names of the informants so that he might
cross-examine them.  We find appellant
opened the door to the testimony at issue.




 








2.  Right of Confrontation

            Even if appellant had not opened the
door to the testimony, we would find his challenge to McCoy’s testimony without
merit.  Appellant contends the trial
court’s actions deprived him of his right of confrontation under the Sixth and
Fourteenth Amendments to the United States Constitution because the court refused
to allow him to cross-examine McCoy regarding the confidential informants.

            The Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the
right . . . to be confronted with the witnesses against him.”  See U.S. Const. amend. VI.[2]  Its purpose “is to ensure the reliability of
the evidence against a criminal defendant by subjecting it to rigorous testing
in the context of an adversarial criminal proceeding.”  See
Lilly v. Virginia, 527 U.S. 116, 123
(1999).  Any undue restriction of
cross-examination can violate a defendant’s Sixth Amendment rights.  See
Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim.
App. 1996).  However, the rights
guaranteed by the Confrontation Clause are not considered absolute and do not
necessarily prohibit the admission of out-of-court statements against a
criminal defendant.  See Idaho v. Wright, 497 U.S. 805, 813
(1990).  As we have determined, appellant
elicited the testimony from McCoy describing the substance of the informants’
statements.  Generally, an appellant may
not invite error and then complain thereof on appeal.  See Ex parte Guerrero, 521 S.W.2d 613, 614 (Tex. Crim. App. 1975);
Brown v. State, 6 S.W.3d 571, 580 (Tex. App.—Tyler 1999, pet. ref’d.). 
Nevertheless, application of the “invited error rule” in this case would
amount to a wavier of appellant’s right of confrontation.  See United States v. Taylor, 508 F.2d
761, 764 (5th Cir. 1975).  For such a
waiver to be effective, a purposeful rather than an inadvertent inquiry into
the forbidden matter must be shown.  Id.  When a defendant, acting through competent
counsel, chooses to open up constitutionally forbidden subject matter, he may
not effectively complain that his own trial strategy denied him his
constitutional rights.  United States v. Davis, 496 F.2d 1026,
1030 (5th Cir. 1974) (citing United States v. White, 377 F.2d 908, 911 (4th Cir.
1967)).  Appellant specifically asked
McCoy the extent of evidence connecting him to the Klein Bank robbery.  Based on McCoy’s prior testimony, appellant
was aware of the confidential informants and that their statements had been
used in support of probable cause for the arrest warrant.  Appellant’s questions to McCoy demonstrate he
suspected that the statements of the confidential informants connected
appellant to the robbery.  Specifically,
appellant’s counsel asked McCoy if either of the informants was present during
the offense.  Thus, appellant’s inquiry
into the extent of information connecting him to the robbery was a purposeful,
not inadvertent, elicitation of forbidden testimony.  Taylor, 508 F.2d
at 764.  In addition, McCoy’s response
was within the scope of appellant’s request. 
Taylor, 508 F.2d
at 764.  Therefore, we find appellant
effectively waived his right of confrontation as to the confidential informants
and the trial court properly overruled appellant’s objection.  Taylor, 508 F.2d
at 764.

            We note that even if appellant had
not waived his right of confrontation, any resulting violation would be subject
to a harmless error analysis.  Shelby v. State, 819 S.W.2d 544, 546–47
(Tex. Crim. App. 1991) (citing Delaware v. VanArsdall, 475 U.S. 673, 684
(1986)).  The Court of Criminal Appeals
has established a three-prong test for reviewing courts to analyze whether
there was harmless error in the confrontation clause context.  Id.  First, we assume that the damaging potential
of the cross-examination was fully realized. 
Id.  Second, with that assumption in mind, we
review the error in connection with the following factors:  (1) the importance of the witness’s testimony
in the prosecution’s case; (2) whether the testimony was cumulative; (3) the
presence or absence of evidence corroborating or contradicting the testimony of
the witness on material points; (4) the extent of cross examination otherwise
permitted; and (5) the overall strength of the prosecution’s case.  Id.  Finally, in light of the first two prongs, we
must determine if the error was harmless beyond a reasonable doubt.  Id.

            In applying this analysis, we focus
on McCoy’s testimony and assume that the damaging potential of the
cross-examination was fully realized.  Id.  We assume the jury would have heard testimony
discrediting the statements of confidential informants identifying appellant as
a participant in the offense.  Id.  We then apply the following five factors:

a.         The
Importance of the Witness’s Testimony in the Prosecution’s Case

            The State did not seek to introduce
evidence regarding the substance of the informant’s statements at trial.  The State questioned McCoy about the
informants solely to ascertain their relation to probable cause to arrest
appellant.  As such, the substance of the
informant’s statements had no significant bearing on the State’s proof of
appellant’s guilt.  Id. at 546–47.

b.         Whether
the Testimony was Cumulative

            McCoy was the only witness to
testify regarding the confidential informants. 
The only other witnesses at trial were Thornton and Standlee,
the two tellers, and Special Agent Jack Kelleher of the Federal Bureau of
Investigation, who was present when appellant signed his written
statement.  No witness offered testimony
cumulative to that of McCoy’s.  Shelby, 819
S.W.2d at 551.

c.         The
Presence or Absence of Evidence Corroborating or Contradicting the Testimony of
the Witness on Material Points

            The offending portion of the
informant’s statements indicated a potential “tie-in” between appellant and the
robbery.  However, at trial, the State
introduced appellant’s written statement wherein he confessed to committing the
robbery.  Even if the trial court had
allowed cross-examination discrediting the confidential informants regarding
their knowledge of appellant’s connection with the robbery, the written
confession of appellant clearly contradicted any such potential testimony.  Shelby, 819
S.W.2d at 546–47.

d.         The
Extent of Cross-Examination Otherwise Permitted

            Appellant was otherwise permitted to
fully cross-examine McCoy regarding other individuals who participated in the
planning of the robbery, whether any reward money or “deals” were offered to
the informants, the details of appellant’s arrest and confession, the accuracy
of appellant’s statement, and the possibility that the robbery was committed by
someone other than appellant.  The only
testimony not allowed by the court during appellant’s cross-examination of
McCoy was the actual identity of the confidential informants, and the potential
discrediting of the informants’ statements. 
Shelby, 819
S.W.2d at 546–47.

e.         The
Overall Strength of the Prosecution’s Case

            The State did not seek to introduce
the statements of the confidential informants at trial.  The strength of the State’s evidence lay in
the testimony of Thornton and Standlee, the two
tellers present during the robbery; appellant’s own written confession; and
McCoy, the officer who investigated the robbery and took appellant’s written
statement.  The statements of the
confidential informants were relevant only to demonstrate probable cause for
the arrest of appellant and were not necessary for a determination of guilt or
innocence.  See Lillard, 994 S.W.2d at 751–52.

            The final step of our analysis
requires us to determine, in light of the foregoing examination, whether the
error was harmless beyond a reasonable doubt. 
Shelby, 819
S.W.2d at 546–47.  Even if the jury heard
testimony discrediting the statements of the confidential informants, the fact
that the prosecution did not seek to introduce testimony regarding the
substance of the informant’s statements, the introduction of appellant’s
written confession, and the overall strength of the State’s case, leads us to
conclude beyond a reasonable doubt that the denial of appellant’s right to
fully cross-examine the witness was harmless. 
Id.

            Because we find that appellant
“opened the door” to the testimony regarding the substance of the statements
made by confidential informants and the violation of the confrontation clause,
if any, was harmless error, appellant’s second point of error is overruled.

                                           3. 
Identity of Confidential Informants

            As the final part of his second
point of error, appellant also maintains that he was entitled to learn the
identity of the confidential informants. 
Texas Rule of Evidence 508 extends a qualified privilege to the State to
refuse to disclose the identity of a person who furnished information or
assisted in an investigation of a possible crime.  See Tex. R. Evid.
508; Sanders v. State, 102 S.W.3d
134, 135 (Tex. App.—Amarillo 2002, pet. ref’d).  However, to compel disclosure of the identity
of an informant, appellant is required to make a plausible showing that the
informant could give testimony necessary to a fair determination of guilt.  See Anderson v. State, 817 S.W.2d 69, 72 (Tex. Crim. App. 1991); Bodin v. State,
807 S.W.2d 313, 318 (Tex. Crim. App. 1991).  Courts have compelled disclosure where appellant
demonstrates that the informant participated in the offense, was present during
the commission of the offense, or could otherwise offer testimony material to
appellant’s participation in the 
offense.  See Edwards v. State, 813 S.W.2d 572, 580 (Tex. App.—Dallas 1991,
pet. ref’d); Ashorn v. State, 802 S.W.2d 888, 891 (Tex. App.—Fort
Worth 1991, no pet.).  The informant’s
potential testimony must significantly aid the defendant.  See Bodin, 807 S.W.2d at 318.  Evidence from any source, but not mere conjecture
or speculation, must be presented to make the required showing that the
informant’s identity must be disclosed.  Id.  Since the defendant may not actually know the
nature of the informant’s testimony, he or she should only be required to make
a plausible showing of how the informant’s information may be important.  Id.

            The record contains no evidence that
the informant’s testimony was necessary to a fair determination of guilt or
innocence, nor does appellant specifically argue such.  See Tex. R. Evid.
508(c)(2); Bodin,
807 S.W.2d at 317–18.  At the hearing on
appellant’s motion to suppress, appellant asserted that the confidential
informant’s statements to the police were relevant toward the issue of probable
cause to arrest appellant.  See Lillard, 994
S.W.2d at 753.  Specifically, appellant
argued to the trial court:

[McCoy’s] sole basis for
probable cause is from the confidential informant.  If I can’t ask questions about the
confidential informant, I’m not asking for their name.  I’m just asking for the information derived
from the confidential informant.  What
was the basis for probable cause to arrest.

Appellant
did not argue that the informant’s testimony was necessary for a fair
determination of guilt or innocence; he asserted it was necessary for a
determination of probable cause to arrest appellant.  Further, at trial, appellant made no
plausible showing that examination of the confidential informant would
significantly aid appellant.  Following
McCoy’s testimony introducing the substance of statements made by confidential
informants, appellant’s counsel stated his objection to the trial court as
follows:

Mr. Keele: 
Because I haven’t been given this information about the confidential
informant.  And I can’t do proper
cross-examination on this person here unless these informants are here.  I know that you have already ruled.  I just wanted to state that objection.

The Court:  What you’re saying is
that you want the confidential informant named?

            Mr. Keele:  Yes. 
Exactly.  I need the right to cross-examine
that person.

The Court:  Court’s not going to allow it.  Note your objection.  Note your exception.

            Appellant’s request did not
constitute a showing that the informant’s testimony was necessary for a fair
determination of appellant’s guilt or innocence.  See
Edwards, 813 S.W.2d at 580; Ashorn, 802 S.W.2d at 891. 
In his objection, appellant’s counsel makes a bare assertion that the
informants’ identities are necessary for his right of confrontation.  However, a mere request for the identity of the
informants is insufficient to compel disclosure.  See Bodin, 807 S.W.2d 318; Smith v. State, 781 S.W.2d 418, 421 (Tex. App.—Houston [1st Dist.]
1989, no pet.) (finding that where appellant presented no evidence in his
request to identify the informant, there was nothing for the trial court to
consider).  Appellant does not assert
that the informants participated in the robbery or witnessed the offense, nor
does appellant argue that the informants could provide testimony demonstrating
appellant’s guilt or innocence.  Edwards, 813 S.W.2d at 580; Ashorn, 802
S.W.2d at 891. 

            Accordingly, we hold appellant has
not carried his burden in proving the materiality of the confidential
informants’ identities.

                                     B.    
Appellant’s Oral and Written Statement

            In his third point of error, also
multifarious, appellant contends the trial court committed reversible error by
allowing into evidence oral and written statements made by appellant after he
was arrested.  The gravamen
of appellant’s complaint is that the police arrested him without probable
cause, and thus, his in-custody statement was the fruit of an unlawful
arrest.  Appellant also contends his
custodial statements were involuntary and coerced.

            The trial court conducted a
pre-trial hearing on appellant’s motion to suppress the written and oral  statements made following his arrest.  McCoy testified regarding appellant’s arrest
and the circumstances surrounding his written statement.  The court also heard the testimony of
Kelleher, who was present when appellant signed his written statement.   Appellant also testified for the limited
purpose of the motion to suppress.  After
the hearing, the trial court denied appellant’s motion to suppress.

                                    1. 
Standard of Review for Motion to Suppress

            In reviewing a trial court’s ruling
on a motion to suppress, we apply a bifurcated standard of review.  Maxwell
v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  We
give almost total deference to the trial court’s determination of historical
facts, while conducting a de novo review
of the trial court’s application of the law to those facts.  Id.  A trial court’s ruling on a motion to
suppress, if supported by the record, will not be overturned.  Hill v.
State, 902 S.W.2d 57, 59 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d).  Furthermore,
if the trial court’s ruling is reasonably supported by the record and is
correct on  any theory of law applicable
to the case, the reviewing court will sustain it upon review.  See
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim.
App. App. 1996).  This is true even if
the decision is correct for reasons different from those espoused at the
hearing.  Id.

                                                        2. 
Legality of the Arrest

            Appellant initially argues his
statements were inadmissible because the arrest warrant was not based upon probable
cause.  The State contends that the
record does not support appellant’s claim because the warrant and the
accompanying affidavit do not appear in the appellate record.  The Court of Criminal Appeals has set out the
procedural requirements for the preservation of error when contesting search
and arrest warrants and their accompanying affidavits.  See
Miller v. State, 736 S.W.2d 643, 648 (Tex. Crim.
App. 1987).  At a hearing on a motion to
suppress, the burden of justifying a contested search or arrest is on the
State.  Id.  If the State intends to justify the search or
arrest on the basis of a warrant, the State must produce the warrant and its
supporting affidavit for the trial court’s inspection.  Id.  In its conclusions of law following hearing
on appellant’s motion to suppress, the trial court specifically found that
“[t]he defendant was arrested pursuant to a valid arrest warrant” and “[t]he
probable cause affidavit supporting the warrant provided sufficient probable
cause.”        Once
the warrant and the supporting affidavit are produced by the State and
presented  to the trial court, it is the
responsibility of the defendant to see that the warrant and the supporting
affidavit are in the record if they are to be reviewed on appeal.  Id.  However, as aforementioned, the arrest
warrant and supporting affidavit do not appear in the appellate record.  We presume that missing portions of the
record support the trial court’s ruling. 
Skinner v. State, 837 S.W.2d
633, 635 (Tex. Crim. App. 1992).  From the trial court’s conclusion of law, it
is apparent that the State met its burden, and the trial court received and
reviewed the arrest warrant and affidavit. 
Once presented to the trial judge, it was the responsibility of the
appellant to see that the arrest warrant and supporting affidavit were included
in the record on appeal.  See Moreno v. State, 858 S.W.2d 453, 462 (Tex. Crim. App. 1993). 
Because the affidavit does not appear in the record, and because the
record reflects that it was presented to the trial court, appellant has failed
to preserve error for review.  See Miller, 736 S.W.2d at 648.

                                                    3. 
Legality of the Confession

            As part of this point of error,
appellant also contends that his statements were involuntarily made and
coerced.  He claims that the police
deceived him by stating that he would not be prosecuted by the federal
government for the offense because the officers had no authority to make such a
claim.[3]  At the hearing on the motion to suppress,
appellant testified:

The promises he made to me was
that – he explained to me what was the difference between Federal and State
charges, which I had no concern – no knowledge of the law.  So, he told me if I didn’t confess, I would
have one chance to confess, that he would drop it to State instead of Federal
charges.

            A confession is involuntary or
coerced if the totality of the circumstances demonstrates that the confessor
did not make the decision to confess of his own free will. Green v. State, 934 S .W.2d 92, 99 (Tex. Crim.
App. 1996).  A misrepresentation made by
police to a suspect during an interrogation is relevant in assessing whether
the suspect’s confession was voluntary, but it is insufficient to render an
otherwise voluntary confession inadmissible. 
Id.  The misrepresentation must be viewed in the
context of the totality of the circumstances. 
Id.  Some types of police deception employed
during custodial interrogation to elicit a confession from the accused are
constitutionally permissible.  Id.  The focus is on whether the law enforcement
official’s behavior was enough to overbear the will of the accused and bring
about a confession not freely determined. 
Id. at 99–100.

            Though he admitted to discussing the
differences between state and federal charges, McCoy specifically denied making
any promises to appellant.  Kelleher
witnessed appellant’s interactions with McCoy during the taking of the written
statement.  Kelleher testified that “in
no way” did McCoy threaten or coerce appellant nor did McCoy make any promises
to appellant at the time.  The trial
court made the following findings of fact regarding the testimony of the
witnesses:  “[t]he officers who testified
at the pretrial hearing on [appellant’s] motion to suppress the confession were
credible.  [Appellant] was not
credible.”   The trial court also
specifically found that:  “[n]o one
coerced or threatened [appellant] to make the confession.  No one promised [appellant] anything in
exchange for his confession.  Officer
McCoy did not promise [appellant] that federal charges would not be pursued if
[appellant] provided a confession.”

            As the sole trier
of fact and judge of the credibility of the witnesses and the weight to be
given their testimony, the trial court was free to believe the officers’
testimony and disbelieve appellant’s account.  See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
Accordingly, the judge may believe or disbelieve all or any part of a
witness’s testimony, even if that testimony is not controverted.  Id.  This is so because it is the trial court that
observes first hand the demeanor and appearance of a witness, as opposed to an
appellate court which can only read an impersonal record.  Id.  We conclude that the trial court’s ruling was
supported by the record, and the trial court properly denied appellant’s motion
to suppress.  Id. at 855. 
Therefore, we find that the trial court did not err in admitting
appellant’s oral and written statements at trial, and appellant’s third point
of error is overruled.

                                                     C. 
Lesser Included Offense

            In his fourth point of error,
appellant maintains the trial court erred by failing to instruct the jury on
the lesser included offense of kidnapping. 
The Court of Criminal Appeals has established a two-prong test to
determine whether a defendant is entitled to a charge on a lesser included
offense.  Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). 
First, the lesser included offense must be included within the proof
necessary to establish the charged offense. 
Id.  Second, some evidence must exist in the
record that would permit a jury rationally to find that if the defendant is
guilty, he is guilty only of the lesser offense.  Id.

            Appellant contends he was entitled
to such an instruction because his written statement makes no reference to a
deadly weapon used or exhibited by either appellant or his co-defendant during
the commission of the offense.  However,
appellant’s statement clearly indicates that the co-defendant possessed a
shotgun during the robbery. 
Specifically, the confession states “[co-defendant] had a black shotgun
and he was going to carry it into the bank.” 
Later in his confession, appellant states “[co-defendant] and me were
wearing long sleeve black shirts and black jeans.  We each had black pull over caps that we had
cut eye holes in, and [co-defendant] was carrying the black shotgun.” 

            The testimony elicited from Thornton also
established that a firearm was used during the robbery.  Specifically, the testimony established that
when the two men emerged and instructed her to unlock the door, one of them
carried a shotgun and used it to pry the doors open.  Further, when Thornton had
difficulty disarming the alarm system, the gunman threatened to shoot her.

            The State concedes that kidnapping
is a lesser included offense of aggravated kidnapping.  See Rogers v. State, 687 S.W.2d 337, 344 (Tex. Crim. App. 1985). 
Thus, the first prong of the lesser included offense test is
satisfied.  The issue is, therefore,
whether any evidence exists in the record that would permit a rational jury to
find that appellant is guilty only of kidnapping.  Ferrel, 55 S.W.3d at 589. 
Kidnapping is elevated to aggravated kidnapping when, among other
elements, the abductor uses or exhibits a deadly weapon during the commission
of the offense.[4]  Tex.
Pen. Code § 20.03(a) & 20.04(b). 
Therefore, if any evidence exists in the record that would permit a
rational jury to find that a deadly weapon was not used or exhibited, appellant
is entitled to an instruction on kidnapping. 
See Ferrel,
55 S.W.3d at 589.

            Anything more than a scintilla of
evidence is sufficient to entitle a defendant to a lesser charge.  Id.  However, the evidence must affirmatively raise the issue.  Bignall v. State,
887 S.W.2d 21, 24 (Tex. Crim. App. 1994).  It is not enough that a jury may disbelieve
certain crucial evidence pertaining to the greater offense; there must be some
evidence directly germane to the lesser included offense for the factfinder to consider before an instruction on a lesser
included offense is warranted. Id.

            Appellant argues that, because his
written confession does not specifically mention the use of a deadly weapon
during the actual commission of the offense, the jury could have concluded that
no such weapon was used.  However,
negative inferences that could possibly be drawn from appellant’s confession do
not constitute affirmative evidence.  See generally, Bignall,
887 S.W.2d at 24.  The Fort Worth Court
of Appeals reached a similar conclusion in Russell
v. State, 804 S.W.2d 287 (Tex. App.—Fort Worth 1991, no pet.).  In Russell,
defendant sought an instruction on a lesser included offense of robbery arguing
that, in the course of his confession, he neither admitted nor denied using a
deadly weapon, specifically a knife, during the offense.  In affirming the trial court’s denial of defendant’s
request for the instruction, the court stated: “[t]he fact that [defendant] did
not mention the use of a knife in the face of overwhelming evidence that he did
use a knife, does not constitute evidence showing that a knife was not used.”  Russell,
804 S.W.2d at 289.  Similarly here,
appellant argues that his confession makes no mention of a shotgun used during
the actual commission of the offense. 
However, both Thornton and Standlee testified
that one of the men carried a shotgun during the robbery.  Despite his assertions, and in light of the
tellers’ testimony, appellant’s failure to continually refer to the shotgun
throughout his written statement does not affirmatively raise the issue that a
gun was not used during the commission of the offense.  Russell,
804 S.W.2d at 289; Bignall,
877 S.W.2d at 24.  Therefore, appellant’s
assertion does not constitute evidence directly germane to the lesser included
offense.  Bignall, 877 S.W.2d at 24.

            We find no instance where appellant
affirmatively raised the issue that a deadly weapon was not used or exhibited
during the offense.  Id.  Further, there is simply no reading of the
trial record from which a jury could rationally find that appellant, if guilty,
was guilty only of kidnapping.  Ferrel, 55 S.W.3d
at 589.  Therefore, appellant was not
entitled to a jury instruction on the lesser included offense of kidnapping,
and appellant’s fourth point of error is overruled.

                                                                III. 
Conclusion

            We find that the trial court did not
err in admitting the substance of statements made by the confidential
informants, and admitting appellant’s oral and written statements.  We further find appellant was not entitled to
an instruction on the lesser included offense of kidnapping.  Therefore, for the foregoing reasons, the judgment
of the trial court is affirmed.

 

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment rendered and Opinion filed
July 24, 2003.

Panel consists of Justices Edelman,
Seymore, and Guzman.

Do Not Publish — Tex. R. App. P. 47.2(b).











            [1]  Generally, the defendant must lodge a timely
and specific objection in order to complain on appeal about the trial court's
admission of improper testimony.  Tex. R. Evid.
103(a).  An objection made after the
objectionable testimony has been given is untimely, and any potential error is
waived.  Amunson v. State, 928 S.W.2d 601, 607 (Tex. App.—San Antonio 1996, pet. ref’d).  However, by
its very nature, an objection based on nonresponsiveness
may come after a response has been made. 
Smith v. State, 763 S.W.2d
836, 841 (Tex. App.—Dallas 1988, pet. ref’d).  Therefore, the availability of an objection
based on nonresponsiveness is an exception to the
general rule that in order to be timely an objection must be made before a
question is answered.  Id.  On the issue of a properly made objection on
the grounds of nonresponsiveness, the Dallas Court of
Appeals has observed:

 

Not every
unresponsive answer should be stricken. It is only when the unresponsive answer
is also inadmissible that it should be stricken. An unresponsive answer which
is competent and makes more apparent the truth of the matters charged against
appellant is admissible notwithstanding its unresponsiveness. Further, it is
within the discretion of the trial court to permit a witness for the State or
for the accused to explain his testimony. Thus, when a question calls for a
“yes” or “no” answer, the witness can explain his answer. If the explanation
furnishes relevant facts, even though unresponsive, the answer is nevertheless
admissible. A “nonresponsive” objection alone,
however, merely informs the trial court why the objection was not made prior to
the answer being given. Even after the “nonresponsive”
portion of the objection is made, there remains the question of the testimony's
admissibility. In this context, in order to properly exclude evidence or obtain
an instruction to disregard, a party must address in its objection both the nonresponsiveness and the inadmissibility of the answer.
Further, a blanket “nonresponsive” objection alone is
an insufficient objection to preserve error where the response is a hybrid
answer--that is, where a portion of the answer is objectionable and a portion
of the answer is not objectionable.

 

Smith, 763 S.W.2d at 841(citations
omitted).  If appellant now contends on
appeal that the witness’s response is inadmissible, we observe that he did not
object on the grounds on nonresponsiveness.

 





            [2]  The Sixth Amendment is made binding upon the
States through the conduit of the Fourteenth Amendment.  Pointer
v. Texas, 380 U.S. 400, 403
(1965).





            [3]  At the hearing on the motion to suppress,
appellant also argued that his statements were involuntarily made because he
was under the influence of marijuana. 
Testifying at the hearing on the motion to suppress, he stated that he
smoked one marijuana cigarette the day of the statement.  He does not advance this argument on
appeal.  Even were he to have preserved
this challenge on appeal, the fact that he may have been under the influence of
narcotics at the time of the confession does not automatically render his
confession involuntary.  Jones v. State, 944 S.W.2d 642, 651
(Tex. Crim. App. 1996).





            [4]  A person commits the offense of kidnapping if
he intentionally or knowingly abducts another person.  Tex.
Pen. Code § 20.03(a).  A person
commits an offense of aggravated kidnapping if he intentionally or knowingly
abducts another person and uses or exhibits a deadly weapon during the
commission of the offense.  Tex. Pen. Code § 20.04(b).  A shotgun is a deadly weapon.  See
Thompson v. State, 33 S.W.3d 847, 855 (Tex. App.—Tyler 2000, pet. ref’d).